400 MADISON AVENUE CORPORATION, Appellant, *v.* LEON NIEGO, Respondent.

First Department, May 22, 1951.

*David I. Shivitz* of counsel (*Edmund B. Hennefeld* with him on the brief; *David L. Charal,* attorney), for appellant.

*Nathan Tanen* of counsel (*Ferdinand J. Wolf* and *Irving Sadur* with him on the brief; *Roosevelt, Freidin & Littauer,* attorneys), for respondent.

*Per Curiam.* By permission of this court, plaintiff landlord appeals from determination of the Appellate Term reversing a final order of the Municipal Court in favor of the landlord in a summary proceeding under subdivision (k) of section 8 of the Business Rent Law. (L. 1945, ch. 314, as amd. by L. 1949, ch. 535.)

By the statute in question, the Legislature has expressly provided that a proposed lease thereunder shall be " noncancellable except for violation of any term or obligation of such lease ". The proposed lease herein in question expressly permits the landlord to cancel if the tenant violates any other lease between the parties. On the ground that the lease did not comply with the " non-cancellable " term of the statute, the Appellate Term reversed the final order in the landlord's favor and dismissed the petition. As it enforces the plain language of the statute, we think the order of the Appellate Term was properly made. It is undisputed that the lease in question provides for cancellation if the tenant violates not alone the terms of the lease itself but also the terms of any other lease between the parties. The emergency rent laws were enacted because of the housing emergency, basically to protect tenants in possession, and provide generally that so long as the tenant continues to pay the rent no tenant may be evicted whether he has a lease or not. Exceptions have been made and by subdivision (k) of section 8, the statute was amended to make a specific exception in favor of landlords. When proposed leases were offered they were required to be not less than ten years and noncancelable except for violation of the terms of the proposed lease. The terms of the exception must be complied with before a landlord can rely on the amendment.

The landlord herein urges that the form of lease with the clause in question is the printed form of the Real Estate Board of New York in existence since 1935 with substantially the same clause, not invented or introduced since the amendment of subdivision (k) of section 8, and that it could not have been the intention of the Legislature that such clause would have to be omitted from leases under that section. The answer to that contention is that the statute as enacted specifically grants the exception in question only if the proposed lease is noncancelable except for violation of its own terms. Forms of leases that are offered under this section must comply with the statutory terms or the exception is not available. The lease in question fails to do so. The remedy is to amend the lease to make it conform to the statute or to amend the law. We can only enforce the law as enacted.

It is said that the clause is not in violation of the amended statute in view of the fact that no other lease exists between the landlord and the tenant. But the lease provision in question is not restricted to existing leases; by its express terms it is applicable to " *any* other " lease (italics ours) between landlord and tenant. Further, by its terms the cancellation clause herein in question is not restricted to the demised premises but could relate to a lease between the same landlord and tenant with regard to any other premises.

The record sufficiently indicates there was some sort of arrangement between this landlord and the prospective tenant to give that tenant some use of basement space that was not made available to the present statutory tenant.

The determination of the Appellate Term should be affirmed, with costs.

Van Voorhis, J. (concurring). The result in favor of the tenant would appear to be correct, inasmuch as the rental of $10,000 per annum under the new lease with the new tenant for a term of ten years appears to have been made as part of an oral agreement that the new tenant would also have basement space in the same building without extra charge. The new tenant was therefore given a better offer than was available to the existing statutory tenant, thus rendering the situation outside of the scope of subdivision (k) of section 8 of the Business Rent Law.

My vote for affirmance is based exclusively upon that ground. The clause in the new lease that it shall be subject to cancellation " if Tenant shall make default with respect to any other

lease between Landlord and Tenant '', is not in violation of the provision in subdivision (k) of section 8 that the new lease shall be '' non-cancellable except for violation of any term or obligation of such lease '', in view of the circumstance that no other lease existed between this landlord and tenant at the time in question. The provision concerning defaults under another lease is said to have been inserted in the standard form of lease of the Real Estate Board of New York in 1935, to cover the situation where a new lease is made of the same premises between the same parties for a term to take effect upon the expiration of an existing lease at a future date. If a tenant in such case were to break a condition of the existing lease, the intention of the Real Estate Board was evidently to leave the landlord free to cancel the future lease before the commencement of its term. No such situation could exist here, inasmuch as the prior lease between the landlord and the tenant in possession had expired. We are dealing with a statutory tenancy. In the nature of the situation, there is no prior lease between these parties to which the Real Estate Board's form clause could apply. The proposed new ten-year lease would follow immediately upon the termination of a statutory tenancy. Consequently there is nothing upon which the cancellation clause in the new lease could operate.

The only situations which have been suggested to which the clause in question could apply are irrelevant. It would hardly extend, in any event, to other real property than the demised premises which might have been or might become subject to lease between the same landlord and tenant. Only a strained construction could likewise render the clause applicable to some future lease respecting the same premises which the landlord and the new tenant might make for a term commencing at the end of the prospective ten-year lease, or which might shorten or otherwise alter the prospective lease. In any instance where a ten-year lease is entered into between a landlord and a new tenant pursuant to subdivision (k) of section 8, the possibility is latent that the landlord and new tenant may in good faith alter or cancel the new lease by later mutual agreement before its termination. The test of its validity is not whether that may happen, but whether some secret understanding to change or end it exists between them at the time when the statutory tenant in possession is given the first refusal. Subdivision (k) of section 8 contemplates that the statutory tenant be given the right to enter into the new relationship upon the same basis in priority to the new tenant, and if, as in this case, there

be some collateral understanding that the new tenant is to have an advantage, such as free use of an area in the basement which the statutory tenant did not or could not enjoy, the requirements of subdivision (k) of section 8 have not been fulfilled. For this reason the determination of the Appellate Term in favor of the tenant should be affirmed.

PECK, P. J., DORE, COHN and McCURN, JJ., concur in *Per Curiam* opinion; VAN VOORHIS, J., concurs in result, in opinion.

Determination unanimously affirmed, with costs to the respondent. [See *post,* p. 927.]